The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good afternoon, counsel. This is case number 4-24-0448, People v. Mercado. First, could we have appearances for the appellant? Joshua Scanlon for Mr. Mercado. Thank you, and for the appellee? First name Allison Page, last name Brooks for the people. Thank you. Mr. Scanlon, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel. My name is Joshua Scanlon with the Office of the State Appellate Defender, and I am representing Mr. Juan Mercado today in asking that this court vacate his conviction, where the trial court incorrectly denied his motions to dismiss based on speedy trial grounds. The core issue in this case is a defendant's ability to repudiate his attorney's actions and demand his right to a speedy trial. Here, Mr. Mercado made every reasonable effort to demand his right to a speedy trial, including dismissing his attorneys when they requested or agreed to continuances that interfered with that right. That decision, coupled with his steadfast demands for a speedy trial, is what requires that his conviction in this case be vacated. Mr. Mercado validly asserted his right to a speedy trial. The general rule that a defendant is bound by his attorney's actions is, as our Supreme Court said in the Bowman case, not an ironclad rule. While a defendant has both a right to counsel and a right to a speedy trial, the two rights can come into conflict, and when they do, Bowman makes clear that the defendant can be forced to choose between the two rights. To assert his right to a speedy trial and to avoid having delays attributed to him, the speedy trial statute requires only one of two things, either a written demand or an oral demand on the record. The cases of Pearson and Hilliard here make clear that the standard for asserting the right to a speedy trial over the right to effective assistance is the attempt to assert the right to discharge counsel and to demand an immediate trial. Thus, to avoid having the delays in this case that were agreed to by his attorneys counted against him, Mercado was required to do two things, both of which he did multiple times. First, that he demand a speedy trial. Mr. Mercado filed four written demands for a speedy trial and then demanded a speedy trial in open court when he was allowed to speak in October. He specifically cited to the speedy trial statute and demanded a trial within that speedy trial period. So I have a question. Prior to October of 2023, did the defendant ever affirmatively and clearly claim he wanted to fire counsel and proceed pro se? Before October 19th? Before October 19th, 2023. Yes, Your Honor. In his motion to reinstate the trial date on August 3rd, he specifically noted that he had fired his attorney and he didn't want any further continuances. Specifically asking again that his speedy trial right be respected, that he... But when he had multiple appearances in court before the judge, at what point did he say, Judge, I want to appear pro se. I want to fire him. I want to handle this case myself, which is the second requirement of Pearson and Hilliard. Yes, and Your Honor, he did that in his written demands up until October when he did it out loud in court. In the prior hearings... As you know, case law requires this must be an unequivocal plain assertion by the defendant. He appeared in court repeatedly, and it was only until October 19, 2023, that he in fact met the Pearson standard, President. He never in open court said, Judge, I want to go pro se. I want to get rid of this guy. And that never appeared, did it? Not until October, Your Honor. But the reason for that is because he was unable to do so in open court at the previous three court appearances that he had. What stopped him? Well, he wasn't present for two of them. He wasn't in the courtroom at all. Were these Zoom proceedings? I'm sorry, Your Honor? Were these Zoom proceedings? No, Your Honor. I don't believe so, Your Honor. I don't believe there's any indication in the record that they were Zoom proceedings. And in fact, I believe at the May court date, the trial court had said, I believe he's in the building somewhere, but he's not here right now, but his attorney is. And those were, you know, present in place proceedings where he could have been brought in, but without his ability to do so, he would have had to be brought in by the court or his attorney. And he wasn't able to make an objection at those court dates because he simply wasn't present. Well, Mr. Scanlon, are we to assume then that he would have made an objection on those dates and therefore excuse the absence of an express desire to proceed pro se? Yes, Your Honor. Under the reasoning in both Pearson and Hilliard, I think a fair reading of the record in this case, both of the following court date, the October 19th court date where he finally was allowed to speak, and of his demands for speedy trial in which he specifically repudiated his counsel's actions and demanded to go to a speedy trial. And the fact that he actually discharged counsel Netsley in favor of counsel Goldstein and then discharged counsel Goldstein. I may be misremembering and correct me if I'm wrong, but it seems like he kind of waxed and waned in terms of his desire to proceed pro se. Sometimes he wanted to have counsel, sometimes he didn't. If that's true, why would we presume that on March the 16th and on May the 3rd, the dates that you're talking about, that he would have on those dates unequivocally expressed a desire to proceed pro se? Your Honor, I think, pardon me, I think the reading of the record that needs, I think the significant facts here are what happened successively. So, originally, I think he was in agreement with his attorney, with counsel Netsley to continue the case up to a certain point to that March 16th continuance. And then he changed his mind and decided that he wanted to proceed with a speedy trial. From that point on, he was consistent that he wanted a speedy trial and he wanted it over whatever his attorneys may have wanted. Attorney Netsley was substituted for Attorney Goldstein within, I believe it was about 10 days of the time that he continued it. And Mr. Mercado's following demand, specifically repudiating his agreement to the continuance at that May date. And then when counsel Goldstein, and I think it's not clear from the record, I think actually it is clear from the record that Mr. Mercado didn't even know about that second court date that he wasn't present for where counsel Goldstein first agreed to a continuance because he wasn't present and because he didn't identify that date as a date that in his following motion for discharge as a date that counsel improperly agreed to a continuance against his wishes. So I don't think Mr. Mercado was even aware of that second court date where he wasn't present. And then from that point on, when he became aware of Goldstein agreeing to continuance at the June 28th court date, from that point on, he was very clear that he wanted a speedy trial and he was discharging counsel Goldstein. Or at the very least, I should say, he was making the attempt to do so. And I want to be clear, it's not the official discharge of counsel by the court that is the significant time or the significant action here. It is the attempt to discharge counsel by Mr. Mercado that is significant. He wasn't present in court and wasn't allowed to speak in court on the dates when he would have been present in order to orally demand to go pro se. Is there any case law that would support this idea that were to assume that had he been in court on those dates that he would have unequivocally requested to proceed pro se for purposes of the speedy trial calculation? I think, Your Honor, that Pearson and Hilliard support that and support that assumption. Well, neither one of those cases involved that fact pattern. Right? Involved the fact pattern where he wasn't present in court. I believe it was. I apologize. I'm not remembering right now if it was Pearson or Hilliard. I believe it was Hilliard. There was at least one date where the person wasn't present and the Hilliard court specifically said, reading the record as it stands, given what he said at the previous date and given what specifically when he finally did demand to go pro se out loud in court at the following date, the court said a fair reading would have been that had he been brought into court on that date, then he would have demanded to proceed pro se and demand an immediate trial as he ultimately did. And I think that is analogous to this situation where he made the demands, he wasn't present and wasn't able to make the unequivocal demand, but when he finally was able to in October, he made an unequivocal demand to go pro se and to demand his right to a speedy trial and not to agree to any further continuances. A fair reading of that record where he wasn't being able to avail himself of the cooperation of counsel or any of the other members of the court, members present in the court or the state, a fair reading of that record shows that had he been brought in, had he been given the opportunity to speak, he would have refused any further continuances and demanded to proceed to trial, including demanding to discharge the attorney where that was necessary. Now, that requirement that he make that attempt has to be, excuse me, pardon me, the duty ultimately falls on the state now in this, in order to bring him to trial within the proper period and where he made these demands for speedy trial on the record, and he did everything that he could possibly have done. It was ultimately on the state and then on the court and counsel to acknowledge those demands and to bring him and for the state to bring him to trial within the proper period. Having failed to do so, his conviction must be vacated. Now, with regard to preservation, this court should treat this case as properly preserved where it was fully litigated before trial and counsel did identify denial of the motion to dismiss as a ground for relief in his post-trial motion. The post-trial motion distinguished the denial for the motion to dismiss from the denial for motion to dismiss based on the alleged Sixth Amendment violation, which was what he had argued following trial. And counsel then clarified during argument that these references to the motions to dismiss referred to the same arguments that he had made prior to trial, and the only argument he made prior to trial was the argument on speedy trial grounds and the ones that he made right after trial. Though counsel went on to discuss a different issue in his argument, this should still be sufficient to preserve the speedy trial issue where it was fully considered and argued before trial. Because the court had an opportunity to fully consider the same essential claim that is now being raised on appeal, this court should follow the reasoning of the Exon and the Patterson cases and treat it as preserved despite any lack of specificity on counsel's part in the post-trial plea. Excuse me. Even if this court should disagree with that, it can find this preserved or it can reach the merits of this claim based on ineffective assistance where counsel's failure then, if this court disagrees that it was sufficiently specific, then counsel was arguably deficient for failing to make explicit in the post-trial motion that he was preserving the challenge to the denial of the motion to dismiss on speedy trial grounds. The rules for preservation are well established and include the necessity of including the issue in a post-trial motion, and there's no reasonable strategic basis for counsel to have failed to do that. Further, it's prejudicial where it has the real possibility of denying review in this case, and had counsel properly presented the basis, it would have at least given the court another opportunity to reconsider its decision in this case, and there is at least a reasonable chance that having that then presented, the court would have recognized its error in denying the initial motions to dismiss. Counsel, isn't inferring what defendant would have done had he been present at those earlier court dates the opposite of clear and unequivocal action on his part? For instance, if he had showed up and not said anything, you can see that was insufficient, right? Yes, Your Honor. How can it be clear when we're inferring something that didn't happen? Your Honor, I think what he did in court or what he was able to do in court needs to be read in tandem with what he actually demanded in his written demands for speedy trial. Right, but if he was there, we wouldn't say, well, I know he didn't say anything, but we have to look at what he filed prior to this. We don't do that. So why would we infer from his absence something that we wouldn't do from his silence were he present? Because he ultimately did make that demand, the unequivocal demand, and because taking that in context with all of his written demands, it is clear that had he been able to, he would have done so. I believe it can be considered a clear and unequivocal demand where his actions were consistent with that demand. His actions were consistent with that inference. That doesn't sound like clear, though. I mean, consistency and clarity are two different concepts. Your Honor, I think it has to be read in terms of taking the record as a whole and considering a fair reading of the record as they referred to doing in both Pearson and Hilliard. So in Hilliard, there was a strong dissent by Justice Coughlin talking about how the record wasn't sufficiently clear on all this. Why shouldn't we be persuaded by her dissent? Your Honor, I believe Justice Coughlin's dissent was not based on the lack of believability that he would have asserted his right had he been present, but based on his use of the term proper persona. So in that case, he used that term proper or improper persona. The defendant in that case did. And the dissent argued that that was sufficiently unclear for the trial court to have otherwise not recognized that he was requesting self-representation. The defendant in that clearly and unequivocally attempted to assert his right until later hearing. And why isn't that similar to our situation? But in the October 2023 hearing, we have perhaps for the first time a clear and unequivocal claim by the defendant. Wouldn't that be consistent with Justice Coughlin's dissent? And if I can piggyback on that question, isn't that the same thing, looking at one point in the record and trying to read backwards? I'm not sure I follow that second part, Justice Stewart. I'm sorry, answer Justice Steigman's question and I will clarify. Just just in specific, I would say taking that one that one point in the record and working backward is not what I think we would be asking the court to do. But taking that final demand to go pro se and taking it in conjunction with his written demands for speedy trial, it is clear from those demands from the point of April on through October that Mr. Mercado's single singular purpose in addressing the court was to demand his right to a speedy trial and that he was going to do that over the wishes of his attorney and that he was going to be willing to discharge his attorney, in fact, having done so. I think taking the fact that he, in fact, did discharge Nestle and substitute him for counsel Wilson and indeed counsel Goldston, admitting that Mr. Mercado did discharge him prior to the October date, that all has to be taken together in a reasonable reading of the record with his ultimate demand in October when he was finally allowed to speak. Mr. Scanlon, I just have to ask you then about June 28, because on Martin you're talking about what he would have done had he been in court on March the 16th and on May the 3rd, but the very next court date, June the 28th, he's there in court. He didn't counsel agrees to it a continuance defendant did not object to the continuance he didn't demand an immediate trial and he didn't attempt to discharge his lawyer Goldston doesn't that fly squarely in the face of what you're saying he would have done had he been in court on March the 16th and May the 3rd. No, your honor, and for the specific reason that Mr. Mr. Mercado specifically alleged, and I note that my time is about to run out. If I may finish this question. Mr. Mercado specifically in his motion to reinstate the trial date later in his motion for discharge and in open court noted that he was not allowed to speak at that June 28 date that he did try to get the court's attention and to speak and that his interpreter was a witness to that and counsel later in the motion for discharge made an offer of proof or asked to make a full offer of proof, stating that the interpreter would testify. That he had not been allowed to speak at the end of that court date to object to that continuance to object to what was happening with his attorney, but he has to do more than object to the continuance. Right? What basis do we have to believe he would have discharged his attorney at that date? Your honor that he did discharge his attorney that he specifically said, and that counsel Goldstein told the court that he fired. He was fired based on not agreeing to the continuance. Here's the concern I was trying to articulate before. To say that there's a clear expression. I don't think we can backdate that to the point where there was something less than a clear expression. With regard to him, not speaking on the June 28 date any day, the whole concept that somehow, because, well, he finally did make it clear. So now, in retrospect, we can look at the earlier court dates and derive that that's what he meant to say then. Your honor, I. Again, I think just under Pearson and Hilliard, and the way that those those courts took what what what the defendant had done. Through over the course of multiple court dates and said a fair reading of this record would be that he. It was not on counsel. These delays that these delays were not attributable to count to the defendant, based on the actions of counsel and the actions of the court in ultimately ignoring or not acknowledging his demands for trial and. To repudiate counsel's actions. Thank you. Taking all of that, we'd simply ask for a verdict in our for decision in our favor. Thank you. Okay, thank you, Mr Scanlon. You'll have time and rebuttal Brooks. Thank you. Your honors. May it please the court and counsel. This is a. It's a case where the defense seems to be asking for a rule that would make it impossible for the trial court and for the prosecution to calculate it speeding trial term going forward by sort of like, trying to retroactively. Recharacterize responsibility for agreed continuances, where a defendant is still represented by counsel and has not yet made in a clear and unequivocal attempt to discharge counsel. And in the Pearson case, the two most important words in that case, or the words here are thereafter granted thereafter granted, meaning that the defendant who makes a clear and unequivocal attempt to discharge their attorney, then the responsibility for a continuance. Thereafter granted, see that that's the distinction here is that when the defendant finally attempts makes a clear and unequivocal attempt to discharge his attorney in October 2023. All but one of the continuances was already granted. The only one that was left was one where the defendant still bore some responsibility for because. By the time he still had an attorney attorney who had a surgery on his head. And that attorney was going to ask for a continuance to the prosecutor stopped preparing for the for the October 30th trial date because of defendant counsel's medical issue. No. So, I mean, in case every single one of these continuances, then it, or at least some responsibility for and that's why it's properly charged to the defense and the distribution to the defense is not against the manifest way of the evidence. Section 103 dash 5 a. The standard there is if delay is occasioned by the defendant. Now, there is a provision for making an oral written demand on the record. Well, that statute, excuse me, was essentially introduced in order to require the defense to make an affirmative objection to a delay. So, if they record was otherwise silent, it would make it the incumbent on the defendant to make an objection. However, it doesn't overrule the actual standard, which is delay occasion by the defendant. It just means in certain situations where there is. The record would be otherwise silent as who's responsible for the delay than anytime the trials delayed. The defendant would have to make a written or oral demand on the record to prevent that from being automatically attributed to the defendant. But here. The defense acquiescence and counsel, for example, the 1st. March 16th, 2023 defense attorney requested delay until July 10th, 2023. Well, that's longest defendant is still acquiescent and representation by representation by counsel under car and Bowman. The defendants acquiescing to that delay and so. That's why Pearson requires a clear unequivocal. Attempt to discharge counsel because otherwise the defendant has competing rights is right to effective counsel. He has a right to speedy trial and defense. Counsel comes in and says, I want delay until July 10th, 2023 and then defendant comes in, try to later repudiated with the demand for trial. Well, he's not discharging his attorney at that point. So, therefore. Under the trial court and prosecution, all the notice they get is that. The defendants agree delay is still attributable to the defense and the speedy clock. Is not advancing on them. Otherwise. It'd be utter chaos and we couldn't figure out what the speedy trial would be or what's happening. So that's why the burden is on the defendants make a clear unequivocal attempt to discharge counsel. But even then, it wouldn't go back and get continuous is already granted because under the hall case. A defendant effectively ratifies. And agreed continuous, unless he promptly repudiates it. Well. Coming in, like, a month later, isn't prompt. So, like, the 1 of the next continuous is we'll just go through all these actually May 3rd. There's going to be a plea hearing date on June 8th and June 5th. They come in plea hearing date supposed to be on June 28th and June 28th. Now, at this point, the original continuous, which July 11. However, because the defense attorneys representation that this was going to be a plea. The prosecutor was no longer available. They'd already scheduled a different case for trial on July 10th. So, it's defendants attorneys representations is case going to be resolved by a plea agreement. That causes the prosecution to be unavailable for that date. So that's why the defense still here bears responsibility for continuing it past. The original July 10th, 2023 trial date. So, the defense attorney agrees to the October 30th date. So, that's why the defendants attorney is now defense is responsible for the delay all the way up to at least October 30th. And as I said, because of the medical issue, prosecutors stop preparing for trial for October 30th, and it had to be continued again. So, even there. Again, the defense spares some partial responsibility for that delay too. So, defenses he fired his attorney in August. Well, again, it's like June 28th. Is the agreed continuous October 30th? Well, if he finally comes in in August. Which is well over a month after that June 28th date and says I fired my attorney. Well, the continuous is October 30th and it's not a thereafter granted continuance. It was already granted. So, the rule of Pearson wouldn't even apply to that continuous October 30th. Because it was already granted and he had ratified that by not repudiating it promptly enough. And so you are saying October 30th and I'm just curious why you're not suggesting or why it's not October 25th. Because that's when the court heard the arguments on the defendants motion for discharge. So, there was. I'm trying to I'm just trying to identify October 30th here versus October 25. Well, because October 30th was the original was the next agreed trial date after. On June 28th when they agreed to the October 30th trial date so defense bears responsibility all the way to the October 30th date. Of course, by the time that rolls around, the defense was going to move to continue with that because of a surgery on the defense attorney's head. Of course, he was ultimately discharged and defendant wanted to go pro se. But by that point, the surgery and the defense was already telling the prosecutors. Yeah, we're going to continue that. I'm having a surgery. I won't be there on October 30th. So, we're going to have to move that trial. So, the prosecutor's like, okay, well, we're not going to prepare for trial on October 30th. So, by the time even October 30th rolls around, the defense is still responsible for further delays. And it's all comes down to the statutory language delay occasioned by the defendant. It doesn't matter if the defense says, oh, I object. It's not about objecting to agree delays at that point. It's about the defense occasioning delay and the defense is to be at least partly responsible for it. And if the defense attorney says, we're going to have a plea, you don't need to prepare for trial. It's going to be a plea. So, they schedule a different case for trial on July 10th. Or they say, oh, I'm having a surgery in my head and we're not going to have trial on October 30th. I'm going to make a motion to move that. So, the prosecutor doesn't prepare for October 30th either. It's like all these are occasioned by the defense. So, it doesn't matter what sort of objections or demands for trial the defendant's making. It is just really a simple application of the statutory standard delay as occasioned by the defense. At least bears partial responsibility for it. That's good enough to attribute it to the defense under the statute. It doesn't have anything to do with the added language about delays. I'm sorry, about written or oral written demand on the record. So, that's why the defendant's demands are not really relevant. Other than the fact is if he has to make under Pearson a clear unequivocal attempt to discharge his counsel, then any continuance thereafter granted, again, the only thereafter granted continuance is arguably the one that got the trial set over from October 30th to November 27th. But, again, it couldn't have gone on October 30th anyway because the defense attorney, prior to being discharged, already told the prosecutor that he's having a surgery on his head and that case wasn't going to go on that date anyway. So, it doesn't really matter the defendant's discharge of counsel. It wasn't a defense agreed a continuance by that point. It was the fact that defense represented the trial wasn't happening. And so, the prosecutor stopped preparing for it. So, therefore, it doesn't really matter that the defendant's discharged his attorney because the prosecutor went unavailable because of the representation made by the defense attorney prior to being discharged. So, that's why, again, the defendant can't evade responsibility for all these delays. So, for those reasons, the state would request his court to affirm the defendant's conviction and sentence. But entertain any other questions. All right. I don't see any other questions. Thank you. Mr. Scanlon, rebuttal. Yes, Your Honor. First, I'd just like to cover a couple of quick things. First, with regard to thereafter granted, with regard to it being that the continuances would only be not attributed to the defendant when he's made the clear and unequivocal statement to object to those continuances and to go, per se, or to discharge counsel specifically thereafter granted. I want to be clear that I think the attempt to discharge counsel is a significant thing. And the attempt to discharge counsel and go pro se, where other counsel may not be available or immediately available to go forward, would be significant. But it is not dependent upon him going pro se, necessarily. If he had counsel in place, as in any instance where a defendant might ask to have counsel withdrawn or counsel discharged, if he has replacement counsel in place, or if he does replace counsel, then there's no negative impact on him for replacing counsel. This is essentially what he did with counsel Netzley to counsel Goldston, believing and having, again, asserted in his later motions that he hired counsel Goldston with the intention of him going to trial within the speedy trial period and not agreeing to further continuances with that demand. Then the fact that he later got counsel Goldston and even later on got counsel Beals doesn't count against him in terms of his attempt to discharge the counsel who agreed to the improper continuances, which he specifically did in repudiating counsel in his written demands. But repudiating counsel isn't a thing, right? You can't say I disagree with my attorney's decision to seek a continuance. It's got to be coupled with, and he's fired. I'm now the decision maker on continuances, not my attorney. And that's the thing that I don't think we can say happened prior to October 19th. I would say that's correct, Your Honor, with one slight caveat, being that if the attorney then agrees to go along with the demand by his client, I don't think that that obviates the ability for him to go forward and demand that speedy trial and not have those continuances attributed to him as long as the attorney agrees to it. If the attorney doesn't agree to it, obviously, then, yes, he has to discharge counsel and go pro se. By agreeing to it, you mean saying no more continuances, but that's still prospective, not retrospective. In terms of counsel agreeing not to have any further continuances. Yes, Your Honor, I agree. Because you can say I'm not going to agree to any other continuances and then in the future agree to another continuance. You can't obliterate the record of any subsequent decision to consent. Yes, Your Honor, I don't disagree with that. And counsel, you've said we should look at the October 19th actions to interpret what he would have done for, maybe what he could have done at the day he showed up and didn't say anything. Even a court of review, even under de novo, we're trying to figure out where did the trial court make a mistake? And you're saying that the trial court should have known the clock was running based on something that happened later. That just doesn't seem fundamentally like a court of reviews approach to trial court error. Your Honor, I would argue not that the court has to go and say and make up what they believe the defendant would have done in order to, or infer that from whole cloth. But that based on, again, based on his written demands, which was the only thing that he could do without being present in court or without being allowed to speak. That is what the trial court should have based its decision on. And in particular, with regard to even like an abusive discretion standard and the review of what this trial court did, this court didn't go back and consider, well, what would the standard be for him to repudiate or for him to obviate counsel's agreement to these continuances and to have them not attributed to him. The court just said counsel agreed to them, and that's the end of the analysis. I don't believe that's the end of the analysis. I believe that was the incorrect determination by the trial court on reviewing the motion for discharge because the court didn't consider whether or not Mr. Mercado would have. And how do we answer that without knowing at that time, back in May and June, what would happen in October? I see that my time is up. I'd just like to briefly respond. Again, unfortunately, I have to go back to what I said with regard to Pearson and Hilliard taking a fair reading of the record as a whole, taking his demands from the date of April 16th through his motion for discharge. And what he specifically alleged in those was that he was demanding that speedy trial and that he discharged his attorneys when they did not follow that demand. And that, taken with his ultimate action in going pro se and moving for discharge, should be considered a fair reading of the record to show that he would have, had he been given the opportunity to at those dates, demanded that and gone pro se. With that, we would simply ask that his conviction be vacated. Thank you. Okay. Thank you. Thank you, counsel, for your arguments. The case will be taken under advisement and the court will issue a written decision on the matter. The court stands in recess.